UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

MICHAEL HEAD,

                         Petitioner

                                                                                       **OPINION & ORDER**

-against-                                                                                05-CV-2607 (SJF)

J. SMITH, SUPERINTENDENT,

                         Respondent

----------------------------------------------------------------- X

FEUERSTEIN, J.:

On April 26, 2000, *pro se* petitioner Michael Head (petitioner) was convicted by a jury in the County Court of the State of New York, Suffolk County, of murder in the second degree (N.Y. Penal Law § 125.25). He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth herein, the petition is denied and the proceeding is dismissed.

II.    BACKGROUND

    A.    Factual Background

The following facts were taken from the underlying petition and the trial transcripts:

On the afternoon of April 22, 1999, seventeen-year-old Rosemarie Henry died following a violent argument with her boyfriend, petitioner Michael Head. Petitioner had gone to Ms. Henry's home in West Babylon, New York, where she lived with her sister and mother, to end their relationship. (Trial Transcript dated March 24, 2000 [T2], p. 473). Petitioner began to remove his

1

belongings from the home and attempted to leave in his car. (T2 at 474-76). Ms. Henry began hitting him and threw a brick through his car windshield. (T2 at 473-76). At that point, petitioner took a jack from inside his car and broke two windows of Henry's house. (T2 at 476). He then left the scene leaving his disabled vehicle behind. (T2 at 477). He returned by bicycle approximately two hours later carrying a loaded handgun. (T2 at 90, 480).

Upon his return, Ms. Henry's mother, Una Barrett ("Una"), accosted him on the street by pulling his shirt and hitting him. (T2 at 484). According to Michael Smith, who witnessed the event, Henry and her sister, Lorraine Barrett ("Lorraine"), pulled petitioner off his bicycle, ripped off his jacket and began beating him. (T2 at 96, 485-86). Mr. Smith characterized the scene as a "street fight" between the three women and petitioner. (T2 at 74, 96). Mr. Smith removed Una from the scene and brought her to his home. (T2 at 74, 97). Ms. Henry and Lorraine remained and continued wrestling and beating petitioner. (T2 at 96, 97). Mr. Smith observed petitioner pull out a handgun and fire one shot into the air. (T2 at 75). Petitioner testified that he pointed the weapon at the sisters and then aimed the gun directly at Ms. Henry, whereupon she yelled, "You ain't gonna shoot nobody." (T2 at 488). Ms. Henry died as a result of a single gunshot wound to the head. (T2 at 452). Petitioner confessed to the crime after being administered Miranda warnings. (T2 at 278-81, 286). At the time of the shooting, Ms. Henry was five months pregnant. (T2 at 472).

B.   Relevant Trial Proceedings

During opening statements, the prosecutrix repeatedly referred to the fact that Ms. Henry had been pregnant and suggested that the possible motive for the shooting was that the child might have been fathered by someone other than petitioner. (Trial Transcript of March 21-23, 2000 [T1], pp. 452-53). Defense counsel moved for a mistrial on the grounds that there was no evidence of the

2

child's parentage and that these references were inflammatory. (T2 at 2-3). The trial court denied the motion and instructed the jury that opening statements were not evidence. (T2 at 5-8).

During the trial and over defense counsel's objection, the prosecution was permitted to elicit testimony about an argument petitioner and Ms. Henry had had three weeks prior to the date of the shooting, and to play a recording of a 911 call in which petitioner allegedly threatened to kill Ms. Henry. (T2 at 243). The court ruled that the 911 tape would be admitted solely on the issue of intent (T2 at 571-72), and instructed the jury on the limited admissibility of the recording. (T2 at 679-80).

Upon learning that the prosecution was not calling Lorraine as a witness, defense counsel requested a missing witness charge. (T2 at 332). At the court's suggestion, defense counsel stated that he would consider securing Lorraine's testimony by subpoena. (T2 at 333). He never did. The trial court denied counsel's renewed request for a missing witness charge before jury deliberations began. (T2 at 577).

At some point during the trial, a newspaper article reported that one of the jurors had mimicked petitioner's facial expression, described as a constant grin, smile or smirk. Defense counsel subpoenaed the news reporter to establish which juror had impersonated the defendant. The trial court interviewed each juror individually to determine whether they had discussed the facts of the case with anyone and whether they had made any finding of guilt in the case. (T2 at 355-65). Following negative responses from each juror, the court quashed the subpoena. (T2 at 365).

During summation, the prosecutrix referred to petitioner as a "gutless wonder" and a "punk with a bad attitude;" asked the jury "what kind of person points a loaded gun at the head of not only the girl he loved, but an unarmed pregnant girl?"; described his facial expression as "smirkitis"; and commented that "a large portion of his testimony was enlightened by the jailhouse lawyers who share

3

the tier with him." (T2 at 617-27). Defense counsel's objections to these comments were overruled. (T2 at 617-18).

Following summations, the trial court denied the defendant's request to charge manslaughter in the first degree as a lesser included offense on the intentional murder count, but granted a request to charge manslaughter in the second degree as a lesser included offense on the depraved indifference count. (T2 at 576-77).

Defense counsel also requested (1) that the jury be charged that the *actus reus* constituting a "grave risk of death" was the placing of the loaded gun next to Ms. Henry's head and not the actual act of discharging the weapon; and (2) a missing witness charge. (T2 at 693-94). Both requests were denied.

C. Procedural History

On April 26, 2000, petitioner was sentenced to an indeterminate term of imprisonment of twenty-five years to life. Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department on the grounds: (1) that he was denied a missing witness charge; (2) that the introduction of the 911 tape was improper; (3) that comments in the People's opening and closing statements denied his right to a fair trial; and, (4) that his sentence was unduly harsh. Petitioner did not raise juror bias or the denial of his request to charge the placement of the gun near the victim's head as the *actus reus*. On June 9, 2003, the Appellate Division affirmed the judgment of conviction on the merits, finding, *inter alia*, (1) that the admission of the 911 tape was not improper; (2) that the sentence imposed was not excessive; and (3) that the claims based upon the denial of the missing witness charge and the alleged prosecutorial misconduct were meritless. People v. Head, 306 A.D.2d 356, 760 N.Y.S.2d 671 (N.Y. App. Div. 2003).

Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. <u>See</u>, 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED

_____
Sandra J. Feuerstein
United State District Judge

Dated: May 12, 2006
Central Islip, New York

To:
Michael Head
00-A-3017
Shawangunk Correctional Facility
P.O. Box 750
Bald Hill, New York 12589-0750


Thomas J. Spota
Suffolk County District Attorney's Office
200 Center Drive
Riverhead, NY 11901